# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

_____

Appeal No. 13-4949
_____

MICHAEL L. WHITE
Appellant, Defendant

v.

UNITES STATES OF AMERICA
Appellee-Plaintiff

On Appeal from the United States District Court
For The Southern District of West Virginia at Charleston

_____

## BRIEF OF APPELLANT MICHAEL L. WHITE

_____

James M. Cagle (WV Bar No. 580)
1018 Kanawha Boulevard, East
1200 Boulevard Tower
Charleston, West Virginia 25301
Email: caglelaw@aol.com
Phone: (304) 342-3174
Fax: (304) 342-0448
_Counsel for Appellant Michael L. White_

# **TABLE OF CONTENTS**

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Statement of Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Issues for Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Summary of Argument.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

> I. In District Court Erred Both When It Concluded That The United States Proved The Interstate Commerce Element of 18 U.S.C. §844(i) And In The Court's Instructions To The Jury About This Element. Federal Jurisdiction Was Absent.
>
> II. The District Court Erred By Finding That the Structure In Question Was A Dwelling Under USSG §2K1.4.
>
> III. The District Court Erred When It Denied The Motion For Acquittal As To Count Three Which Charged Accessory After The Fact.
>
> IV. The District Court's Sentence Enhancement For Obstruction Of Justice Violates The Sixth Amendment Right To Trial By Jury.

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

i

## TABLE OF AUTHORITIES

Apprendi v. New Jersey, 530 U.S. 466 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Argersinger v. Hamlin, 407 U.S. 25 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Blakely v. Washington, 542 U.S. 296 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15,16

Duncan v. Louisiana, 391 U.S. 145 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16,17

Jackson v. Virginia, 443 U.S. 307 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Magna Carta, 391 U.S. at 151-152.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Russell v. U.S., 471 U.S. 858(1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

U.S. v. Booker, 543 U.S. 220(2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

U.S. v. Davis, 98 F. 3d 141 4th Cir. (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

U.S. v. Dunnigan, 507 U.S. 87 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

U.S. v. Jackson, 22 F. 3d 583 (5th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

U.S. v. Jones, 529 U.S. 848 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,8

U.S. v. Milligan, 3 Fed. Appendix 169 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

U.S. v. Parsons, 993 F. 2d 38 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

U.S. v. Smith, 354 F. 3d 390 (5th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,12

U.S. v. Troy, 618 F. 3d 27 (10th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,7

U.S. v. Vogt, 910 F. 2d 1184 (4th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Constitution**

U.S. Constitution, Amendment Six. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-17

**Statutes**

18 U.S.C. §3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,13

18 U.S.C. §844(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,5,6

U.S.S.G §2k.1.4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,12

U.S.S.G. §3C1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Text**

Black's Law Dictionary (9th ed.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## Statement of Jurisdiction

This appeal is filed under the authority of 28 U.S.C §1291 in that it addresses a final decision of the U.S. District Court for the Southern District of West Virginia. The Court's final judgment was entered on December 16, 2013. Notice of this appeal was filed on December 2, 2013 before the entry of judgment. Sentencing took place on November 21st.

## Issues for Review

1.      Whether federal jurisdiction was established?

2.      Whether the District Court should have entered a judgment of acquittal on the grounds that the United States failed to prove the interstate commerce element contained in 18 U.S.C. §844(i)?

3.      Whether the District Court correctly instructed the jury on the element of the interstate commerce nexus?

4.      Whether the word "dwelling" as used in U.S.S.G. §2k1.4 was properly interpreted and applied?

5.      Whether the District Court should have entered a judgment of acquittal as the Count Three accessory after the fact.

6.      Whether the sentence enhancement for obstruction of justice violated Mr. White's Sixth Amendment right to a jury trial?

## Statement of The Case

Appellant Michael L. White stands convicted of the crimes of conspiracy to commit arson and mail fraud in violation of 18 U.S.C §371, aiding and abetting arson in violation of 18 U.S.C §§844(i) and 2, and accessory after the fact in violation of 18 U.S.C. §3. He was sentenced to a

1

term of seventy-eight(78) months in prison, supervised release of three(3) years, special assessment of $300, and ordered to pay restitution in the amount of $80,716.51, JA25.

Mr. White was first charged with conspiracy and aiding and abetting in a different indictment which was dismissed on the motion of the government after it was disclosed that the government's primary witness, one Kimberly Kinder, had testified falsely to the grand jury which first indicted Mr. White. Moreover, it was disclosed during a plea hearing for Mrs. Kinder that she had a significant history of mental illness as well as addiction and/or abuse of controlled substances.

A second indictment was returned upon which this conviction stands, JA17. The District Court granted an in camera review of Ms. Kinder's medical records in response to Mr. White's motion and permitted the accused's counsel some limited access to, and use of, those records at trial, JA190. That ruling is the subject of an appeal by witness Kim Kinder to this Court, [1] <u>see also</u> JA313-315 and 190.

Mr. White's trial in Charleston, West Virginia which is the subject of this appeal took place between the dates of May 7th and May 10, 2013. An earlier trial had ended in a mistrial as the result of an error related to the presentation of government evidence.[2] After the verdict was returned, Mr. White was remanded to custody where he has since remained.

---

[1]The appeal is styled Kim Kinder v. Michael L. White and United States of America, appeal no. 13-4198. The case was argued in Richmond on October 30, 2013.

[2]The error involved the use as evidence of a tape which contained a reference to a fire at Mr. White's residence. That fire was the subject of the Thompson interview as relates to Count Three, accessory after the fact, <u>see argument infra</u>.

2

**Statement of Facts**

Mr. White is a resident of Chapmanville which is in Logan County, West Virginia. He owned a duplex apartment in neighboring Boone County, in the small community of Van, JA485. On the night of October 15, 2009 the duplex burned. Mr. White later collected insurance from Nationwide Insurance Company for his losses sustained as the result of this fire, JA421.

Witness Kimberly Kinder first stated that she alone had started the fire at the behest of Mr. White, JA309-311, 331. Later, Ms. Kinder stated that it was her late husband who had since died in a car accident who had set the fire, JA332-333. Her testimony at trial was that she and her husband had driven to Van to set the fire, that she had driven around in her vehicle while her husband entered one of the unoccupied former apartments to start the fire, JA333-334. No one was living in the duplex at the time of the fire, JA242-243, 266-267, as the tenants had not paid any rent for many months and were evicted by court order.

Ms. Kinder and her late husband had previously resided across the street from Mr. White, JA487. Ms. Kinder had worked for Mr. White cleaning his house, JA276. Her husband had at times worked for Mr. White at a coal mine and he had at times performed various chores for him, JA488-489. Further, Mr. White and Ms. Kinder had a sexual relationship, JA476, 487. She testified that Mr. White asked her and her husband to burn the building one day while they were at his home, JA282-283. She further testified that Mr. White paid her and her husband in several cash payments for having burned the building, JA292-295.

At trial the former tenants at the duplex confirmed that they were no longer living at the duplex when it burned. Each acknowledged that she been evicted for nonpayment of rent, JA224 & 251.

3

Mr. White testified that he did not hire or solicit Ms. Kinder and/or her late husband to burn the duplex, JA494. He denied having paid the Kinders for burning the structure. Rather he stated that he helped them financially because they asked him to at times when they needed money, JA489-491, 503-504. Kim Kinder confirmed the fact that Mr. White had loaned them money, JA383-385.

At trial the principal evidence presented against Mr. White was a tape recording made by a police investigator of a phone conversation between Ms. Kinder and Mr. White, JA298-308. Mr. White testified that he had previously been told simply to go along with whatever Ms. Kinder said in the phone call because she was unstable and was making threats to harm herself, JA507. A witness was unsuccessfully offered to confirm this aspect of the account, JA468(by proffer), 470-473.

At trial Ms. Kinder confirmed her extensive history of drug abuse and mental problems, JA354-367, 369-370. This included several hospitalizations and diagnoses of bipolar disorder, schizophrenia, depression and symptoms of hallucinations, hearing voices and seizures. However, the Court below denied the offer of Kinder's medical records as trial exhibits even as they had been redacted by the Court, JA312-315.

On February 10, 2010 Mr. White was interviewed by a Mr. Thompson who is a representative of Nationwide Insurance Company concerning a another fire which occurred at his home, not the fire in question in this case, JA442 see footnote 2 above. He testified that if Mr. White had told him in the interview that he knew that the Kinders had burned the duplex (which was not why he was interviewing Mr. White) then he would have turned that information over to Nationwide's special investigation unit, JA443-445. They could then inform authorities.

4

At sentencing Mr. White advanced four(4) objections, JA52-56. Those objections were: (1) that the pre-sentence report(PSR) relied on the alleged presence of electricity to satisfy the interstate commerce nexus required by 18 U.S.C. §844(i) (2) that the guideline base level should have been twenty(20), not twenty-four(24) as the structure when destroyed by fire was not a "dwelling," USSG §2K1.4 (3) that Mr. White suffers from an extraordinary medical condition, USSG §5H1.4 and (4) that the obstruction of justice enhancement was being wrongly applied, USSG §3C1.1. The Court adopted the recommended findings of the PSR with the exception of the statement that the presence of electricity supplied the jurisdictional nexus. Otherwise, each objection was overruled by the Court, JA145. Counsel was specific as to his objections and the Court was specific as to its findings, JA157-173.

## Summary of Argument

1.   The District Court erred:

    a.   By denying a motion for judgment of acquittal on matters related to the interstate commerce element, 18 U.S.C. §844(i).

    b.   By giving erroneous instructions on said element.

    c.   By failing to find that this was not a case for federal jurisdiction of the arson in question.

2.   The District Court further erred:

    a.   By misinterpreting the term "dwelling" as contained in U.S.S.G. §2k1.4.

    b.   By enhancing Mr. White's sentence in violation of the Sixth Amendment.

3.   And, the District Court erroneously denied the motion for judgment of acquittal on the charge of accessory after the fact.

5

## Argument

## I.

**The District Court Erred Both When It Concluded
That The United States Proved The Interstate Commerce
Element Of 18 U.S.C. §844(i) And In The Court's Instructions
To The Jury About This Element.  Federal Jurisdiction Was Absent**

### A.

### Standard of Review

Because the District Court denied Mr. White's motion for judgment of acquittal the appellate review is conducted pursuant to a deferential standard in which the evidence is considered in the light most favorable to the United States, asking the question of whether a rational fact finder could have found the essential elements beyond a reasonable doubt, Jackson v. Virginia, 443 U.S. 307 (1979); U.S. v. Vogt, 910 F. 2d 1184 (4th Cir. 1990).  As this also presents a question of law, the review is de novo, U.S. v. Troy, 618 F. 3d 27 (1st Cir. 2010).

### B.

### Appellant's Contentions

To be convicted under the provisions of 18 U.S.C. §844(i) requires proof that the property in question was being then used in interstate commerce or in any activity affecting interstate commerce, U.S. v. Jones, 529 U.S. 848 (2000).  The arguments concerning whether the evidence below satisfied this element were specifically addressed on three(3) occasions during the trial and post trial proceedings.  Mr. White contends that Jones finds the existence of a temporal element which requires that the property must be in or affecting interstate commerce "at such time as the explosion or burning occurs. . ." JA76.

6

As discussed first during the charge conference the parties articulated their differing views about whether the applicable law as found in <u>Jones</u> contains the temporal requirement which is urged by Mr. White.  The government's view is that ". . even if <u>Jones</u> suggests or implies a temporal element. . . . the time that you look at is not when it burned. . ." JA77.  Rather, the government agreed that the time to look at is when the intent to burn occurred, the plan was made, or the conspiracy was entered into.  The District Court decided to "reserve a decision on this particular instruction."  The Judge very candidly stated that he had struggled with this instruction "more than any other instruction I've ever struggled with . . ." JA80.

The issue was revisited at the close of the government's case in chief when the motion for judgment of acquittal was made as to counts one and two of the indictment on the grounds that "there has been. . . insufficient evidence. . . that would prove the element of interstate commerce. . .and I do rely on my argument at the charge conference. . ." JA450.  This motion was being made immediately after the District Court had announced its decision on this question, JA448-449.  The Court concluded that <u>Jones</u> cannot be read to mean open for business at the precise moment when the match is struck, relying on language found in <u>U.S. v. Troy</u>, 618 F. 3d 27, <u>supra</u>.

The issue was raised again in the motion to set aside the verdict and for a new trial, JA120.  The District Court found in its memorandum opinion and order that Mr. White's argument represents an "overly mechanical and ultimately inaccurate interpretation of the <u>Jones</u> decision," JA133.  The Court concluded that:

> ". . . the Van Duplex was, at least at one time, actively held out for rent. The question at issue in this case is one that the *Jones* Court did not address; that is, whether a rental property ceases to be actively used in

> interstate commerce because it is vacant at the time the arsonist strikes the match. Under Defendant's interpretation of *Jones*, the Van Duplex moved beyond the reach of §844(i) when his last tenant vacated the property approximately two weeks before the Kinders set it ablaze. Such a cursory reading of *Jones*' "active use" language would lead to ludicrous results, however, and does not square with Fourth Circuit precedent that is factually on all fours with the case at hand," JA134.

The Fourth Circuit precedent the Court was referring to includes U.S. v. Parsons, 993 F. 2d 38 (1993) and U.S. v. Milligan, 3 Fed. Appendix 169 (2001) (unpublished). In each of these cases the structures were not occupied when the fires occurred. Nevertheless, federal jurisdiction was found by this Court.

U.S. v. Jones clearly holds that 844(i) must be read to mean the active employment in interstate commerce as distinguished from passive, passing and past employment. It is submitted that when the tenant in rental property leaves and ceases as a tenant the property and the landlord-tenant relationship are both in law and in fact in the past. "Used in" as contained in 844(i) and as interpreted in Jones must be read to be in the present tense. The District Court's conclusion that jurisdiction is supported in that the Van Duplex was at one time actively held out for rent is contrary to Jones.

Jones instructs that Courts should first inquire into the function of the building, then consider whether that function affects interstate commerce, Jones at 854. Under the facts of this case when this structure burned it was functioning as a place where former tenants had abandoned some items of personal property when they moved out. The duplex in question was not actively being used for anything, much less for matters of commerce. Being a structure where people formerly resided adds nothing to interstate commerce. Indeed, the connection of an empty building to interstate commerce is only passive or in the past.

8

The interpretation by the Court below that <u>Jones</u>, by affirmatively citing <u>Russell v. U.S.</u>, 471 U.S. 858(1985), for the proposition that property held out for rent supports its decision in this case is not sound under the facts presented. Mr. White was not offering to rent this premises when it burned. The premises had been removed from the market at such time as tenants departed. There was no evidence that new tenants were being sought.

The argument which the government advanced at the charge conference and the District Court later adopted, JA137, to the effect that the property possesses an interstate commerce nexus because the plan to burn was hatched when the duplex was occupied does not support a conspiracy involving a federal crime. The inconsistency is in the District Court's own conclusion which finds that "the Kinders drove by the Van Duplex twice prior to October 15th with the intent to burn it, both times finding Ms. Dickens still there. Ms. Dickens finally vacated the apartment approximately two weeks before the fire, "JA137. Ms. Kinder testified in regards to Mr. White's alleged instructions to her husband and to her about the tenants that:

> "He said that he had already – he said they had already been evicted. He had already went to Court with them twice and he wanted them – <u>he wanted it done and they were gone</u>. To his knowledge they were gone, JA284.

Thus under this evidence the conspiracy as to violating §844(i) was a conspiracy intended to burn a non-occupied, formerly rented, duplex. *This evinces a plan to violate state law, not federal law*.

The Court's offending instruction was as follows:

> "The law considers property that is offered for rent or used as rental property to be "used in interstate commerce" within the meaning of this statute. The mere intent to burn a building does not automatically prove that it was not used in interstate commerce. Rather, you may make the

> determination regarding whether a building was "used in interstate commerce" based on how the property was routinely used immediately before the formation of any plan to burn the building and/or during the execution of any such plan. You may consider whether it was used as a rental property during any part of the life of any scheme or conspiracy to burn the building. You may also consider evidence of how the property was classified for insurance and property tax purposes in deciding whether the property in question was rental property and, thus, used in interstate commerce within the meaning of the statute.
>
> Even if the rental property was vacant at the time was destroyed, it may qualify as a building used in or affecting interstate commerce if the owner intended to return the building to an active commercial or business use or purpose. A building that is permanently vacant or removed from commercial use for reasons other than an intent to burn it is not a building that is used in or affects interstate commerce."

The Court's inclusion in its instruction of the building's use "during any part of the life of any scheme or conspiracy. . ." as satisfying the interstate commerce element is error. Moreover, how the building was previously classified for tax or insurance purposes does not place it in interstate commerce. Further, the qualifying language about a vacant building being removed for "reasons other than an intent to burn. . ." is not language found in prevailing precedent on the this subject. Therefore, this language is entirely in conflict with the <u>Jones</u> decision.

The District Court's decision and its instruction that the interstate commerce nexus can be established by this evidence irreparably prejudiced Mr. White as to each of the Counts contained in the indictment. The three counts each required that the crime of <u>arson alleged in the indictment be committed</u>, JA105, 106, 107, 110-111 and 112-113. As stated by the Court in instructing the jury about Count Three accessory after the fact:

> ". . . the government must prove that the arson of the Van Duplex <u>was a federal offense</u>, but the government does not have to prove that the Defendant knew that the arson was a federal offense," JA113.

10

The most significant point ultimately is that the District Court's jurisdiction over the arson alleged in Mr. White's case was lacking. Accordingly this case should not have been submitted to the jury for a verdict. While Count One conspiracy alleges two objects as the jury was instructed, JA109, it cannot be said that the error as to the arson object was harmless. Evidence about the arson permeated the entire evidence. Indeed, arson dominated the government's allegations and the jury's charge. Accordingly, Mr. White's convictions as to each Count should be reversed.

## II.

### The District Court Erred By Finding That The Structure In Question Was A Dwelling Under USSG §2K1.4.

#### A.

#### Statement of Review

Mr. White alleges error by the District Court in its conclusion that the Van Duplex was a "dwelling" under the U.S. Sentencing Guidelines §2K1.4. The interpretation of the guidelines is a question of law, thus the review is <u>de novo</u>. The factual findings made as are applied in determining the sentence under the guidelines are reviewed under a clearly erroneous standard, <u>U.S. v. Smith</u>, 354 F. 3d 390 (5th Cir. 2003).

#### B.

#### Appellant's Contentions

Mr. White's objection to the characterization of the burned structure as being a "dwelling" is set forth in his response to the proposed pre-sentence report, JA53. The issue was argued at sentencing, JA148-152. The District Court concluded as both law and fact that the

11

burned structure was a dwelling, JA151-152. Section 2k1.4 of the federal sentencing guidelines provides that the base level for arson is 20 when the structure is other than a dwelling and 24 when it involves a dwelling. As a consequence of the Court's decision the base offense level arrived at was level 24. The difference is that level 20 carries a sentence of 33 to 41 months while level 24 carries 51 to 63 months.

As the Court below noted the term "dwelling" is not defined in the sentencing guidelines, JA151. As such Mr. White argued that "dwelling" should carry its ordinary dictionary meaning of being a "home, house, abode or residence," JA57. It should also carry the meaning which applies at the time it is destroyed, not based upon a part or future usage.

The United States cited as support the decision of U.S. v. Smith, 354 F. 3d 390 (5th Cir. 2003), which found that "dwelling" as used in §2k1.4 would include a motel which had burned during a three-month seasonal vacancy. The Court considered this case to be inapposite. In Mr. White's case the Court below relied on the recent eviction, the presence of some personal property and the "overall plan . . . for arson and mail fraud" to find by a preponderance of the evidence that the structure was a dwelling, JA151-152.

The Court in Smith distinguished the earlier 5th Circuit opinion in U.S. v. Jackson, 22 F. 3d 583 (5th Cir. 1994). In Jackson the issue presented was whether the Defendant's conviction of burglary under Texas law constituted a crime of violence under the Sentencing Guidelines, U.S.S.G. §2k2.1(a)(4) and §4B1.2(a)(1) and (2). As Mr. Jackson had been previously convicted of "burglary of a vacant house" the Jackson Court rejected the government's proposed crime of violence enhancement. The Court held that "logically whether by vacancy, physical deterioration, altered use, or otherwise, a point in time exists at which a dwelling loses its

character and becomes a 'mere' building," 22 F. 3d at 584.  In the case <u>sub judice</u> the Van

Duplex became precisely that, a vacant former apartment.

Black's Law Dictionary (9th ed.) defines the verb "dwell" to mean "to remain; to linger."

"Dwelling-house" is therein defined as "the house or other structure in which a person lives; a

residence or abode."  In that the guidelines fail to more specifically define the word "dwelling" as

therein used the meaning should be consistent with the requirement that a person lives there at

the time.  This conclusion is consistent with the rule of statutory construction that nontechnical,

undefined words in a statute are normally given their plain or ordinary meaning, <u>U.S. v. Davis</u>,

98 F. 3d 141 4th Cir. (1996).  Using the ordinary meaning the base level should have been level

20.


### III.

### The District Court Erred When It Denied The Motion For
### <u>Acquittal As To Count Three Which Charged Accessory After The Fact</u>

#### A.

#### <u>Standard of Review</u>

The Court reviews the denial of a motion for judgment of acquittal under the sufficiency

of the evidence standard viewed in the light most favorable to the government <u>U.S. v. Davis</u>,

<u>supra</u>.


#### B.

#### <u>Appellant's Contention</u>

Count Three of the indictment accuses Mr. White of violating 18 U.S.C. §3 accessory

after the fact, JA23.  The accusation was that in February, 2010 he failed to inform an insurance

adjuster that Kim Kinder was involved in the duplex arson.

The unusual fact concerning this accusation is that the interview by this adjuster named Thompson was not about the fire at the Van Duplex. Another adjuster named Adkins was assigned to the Van Duplex fire, JA420-421. The Court had granted Mr. White's motion to present any reference to another fire which occurred at Mr. White's home, docket no. 16, JA139. As a result of the foregoing the evidence was insufficient to prove the required element that Mr. White thereby provided assistance to Kimberly Kinder in order to prevent or hinder her apprehension, trial or punishment, JA113. Prosecution or investigation of the Van Duplex fire not the subject of the Thompson interview. The question was merely whether you have had other fires and what occurred. That is not enough to satisfy the intent to hinder or prevent an investigation or trial of the other matter.

This argument was discussed first at the charge conference, JA84-89. The argument was repeated in connection with Mr. White's motion for acquittal, JA452. It was raised once more in the post-trial motion, JA120-121. The District Court ruled that the evidence demonstrated that Mr. White knew of Ms. Kinder's participation in the fire and concealed it to adjuster Thompson, JA139-140. The Court concluded that this was sufficient to prove the crime.

It is submitted simply that this evidence fails to establish that Mr. White when participating in the Thompson interview intended to assist Ms. Kinder in order to prevent her apprehension, trial or punishment for an entirely different matter. Considered in the light most favorable to the government, the evidence shows nothing more than a passing comment to a lay person, not known by Mr. White to be in any way connected to law enforcement, about a subject which was not the matter under discussion. The requisite intent to hinder is lacking.

14

**IV.**

**The District Court's Sentence Enhancement For Obstruction
Of Justice Violates The Sixth Amendment Right To Trial By Jury**

**A.**

**Standard of Review**

As this argument questions the constitutionality of the procedure which was employed by the District Court in enhancing Mr. White's sentence for obstruction of justice by perjury at trial the review is <u>de novo</u>.

**B.**

**Appellant's Contentions**

The PSR was amended to include a two(2) level enhancement for obstruction of justice, JA42 paragraph 58, U.S.S.G. §3C1.1 Mr. White objected, JA55. The PSR alleged and the District Court found by a preponderance of the evidence that Mr. White testified falsely at his trial, JA156-173.

Mr. White argued that the Court's finding of perjury infringed his right to jury trial under the Sixth Amendment JA157-158. The argument is grounded in <u>U.S. v. Booker</u>, 543 U.S. 220(2005). Also, the Supreme Court's opinion in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004) provides support for this argument.

In <u>Blakely</u> the judge, after a three day evidentiary hearing, decided to increase Mr. Blakely's kidnaping sentence by three(3) years on the grounds that his acts were characterized by deliberate cruelty, an aggravating factor under Washington State sentencing law. Blakely appealed on the grounds that this procedure deprived him of his Sixth Amendment right to have a

jury determine beyond a reasonable doubt all facts essential to his sentence. The Supreme Court agreed with Blakely holding that the sentencing judge's enhancement of three(3) years based on facts which the judge found violated the Sixth Amendment right to trial by jury, 542 U.S. at 301-314.

In <u>Booker</u> and its companion case of <u>U.S. v. Fanfan</u> the Court considered whether Sixth Amendment principles apply to the federal sentencing guidelines. The Court found that the Sixth Amendment as construed in <u>Blakely</u> does apply to the guidelines. The issue herein presented is whether an increase in sentencing such as this which is based on a judge's finding of perjury implicates the Sixth Amendment jury trial right. It is submitted that it does.

The allegation of in trial perjury is a serious allegation. It is also one which customarily is a subject for grand jury and jury determination. The two hurdles which confront the appellant in this context are first, the sentence as enhanced does not exceed the statutory maximum, <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) and second, in the case of <u>U.S. v. Dunnigan</u>, 507 U.S. 87 (1993), this guideline enhancement under the procedure employed below was approved.

<u>Dunnigan</u> pre-dates <u>Apprendi</u>, <u>Blakely</u> and <u>Booker</u> and may well be in conflict with these later cases particularly under certain circumstances. Moreover, the very nature of non-jury fact finding which adds significant time to one's loss of freedom does, even when standing alone, infringe on the right to one's trial by jury. In this regard, Mr. White relies upon the decisions in <u>Argersinger v. Hamlin</u>, 407 U.S. 25 (1972) addressing right to counsel and <u>Duncan v. Louisiana</u>, 391 U.S. 145 (1968) addressing right to trial by jury. In each case the accused's Sixth Amendment rights were deemed protected in criminal cases which were deemed non-petty because they were punishable by more than six(6) months incarceration.

16

In Mr. White's case his sentence was increased by as much as fifteen(15) months by the two(2) level enhancement for obstruction.  As the Court reasoned in <u>Duncan</u> our right to a jury trial can be traced back to the Magna Carta, 391 U.S. at 151-152:

> ". . . the truth of every accusation, whether preferred in the shape of indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of his equals and neighbors. . .<u>Duncan</u> citing Blackstone, <u>Commentaries of the Laws of England</u> Id.

In view of the importance of the historical right to a jury trial, the significance of the increase in sentence involved, and the fact that perjury is most commonly a matter for juries to determine and grand juries to indict this Court should reverse the District's Court's enhancement for obstruction of justice as a violation of the Sixth Amendment.

<u>**Conclusion**</u>

For the foregoing reasons Mr. White's convictions should be reversed and this case should be remanded with directions to dismiss the charges.  In the alternative, Mr. White's sentence should be reversed and the case should be remanded for re-sentencing .

/s/ James M. Cagle
_____
James M. Cagle (WV Bar No. 580)
1018 Kanawha Boulevard, East
1200 Boulevard Tower
Charleston, West Virginia 25301
Email: <u>caglelaw@aol.com</u>
Phone:  (304) 342-3174
Fax: (304) 342-0448
*Counsel for Appellant Michael L. White*

17

**<u>Certificate of Service</u>**

The undersigned, counsel for the Appellant, Michael L. White, does hereby certify that a true and correct copy of the ***Brief of Appellant Michael L. White***, was served via Hand Delivery to Larry E. Ellis, Assistant United States Attorney, on this the 25th day of February, 2014.

/s/ James M. Cagle
James M. Cagle (WV Bar No. 580)
1018 Kanawha Boulevard, East
1200 Boulevard Tower
Charleston, West Virginia 25301
Email: caglelaw@aol.com
Phone:  (304) 342-3174
Fax: (304) 342-0448
*Counsel for Appellant Michael L. White*

18